UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH SAVOIE            *     CIVIL ACTION NO: 14-0700
                                     *
v.                                     *
                                     *     JUDGE BRADY
MAJOR DANIEL DAVIS;         *
CAPTAIN JAMES SAVOY;        *     MAGISTRATE JUDGE
CAPTAIN SCOTT KENNEDY; and     STEPHEN C. RIEDLINGER
CAPTAIN JOHN SANDERS
**************************************************

**OPPOSITION TO MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

On February 24, 2015, Captain James Savoy, filed a *Motion to Dismiss* [23] asserting that he had been sued in his official capacity and invoking Eleventh Amendment and seeking a finding that Mr. Savoy failed to plead a 42 USC § 1983 claim against him for violation of either his Fourth or Eighth Amendment Rights. Captain Savoy further seeks the protection of qualified immunity. Where the motion lacks merit, it should be denied.

**I.**     **STATEMENT OF THE CASE**

     **A.**     **Nature of the Case**

This is a civil rights action brought by an inmate arising out of the use of unnecessary and excessive force, the use of corporal punishment, for the deliberate indifference to the federally protected rights of an inmate under the custody of Louisiana State Penitentiary.

     **B.**     **The Ground Rules**

42 USC § 1983 provides the following:

> **Every person who**, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or **causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,** <u>shall be liable to the party injured</u> in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the

purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. [Emphasis added]

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. *See also*, LAC 22:3309 (B).

> A. The secretary of the Department of Public Safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**[1]

Thus, in Louisiana an inmate is protected by law from unnecessary and excessive force <u>and</u> from corporal punishment. *See* Department Regulation No. C-02-006 (6)(B)(C)(D). [22-7, 2-3 of 24].

Necessary Force is defined by the Department as "Force used when all other options have been exhausted, unavailable or are not feasible." Department Regulation No. C-02-006 (6)(I). Reasonable Force is defined as "Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from boldly injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances." Department Regulation No. C-02-006 (6)(J). The use of "any type of force for punishment or reprisal is strictly prohibited." Department Regulation No. C-02-006 (9)(A)(1). [22-7, 2-3 of 24]

The Department of Corrections has adopted procedures to handle disciplinary violations.

---

[1] See also [22-7, 5 of 24].

### C. Savoy allegations

The Complaint [Rec. Doc 1] alleges that on January 4, 2014, JOSEPH SAVOIE was a DOC inmate housed at the LSP. On January 3, 2014, around 8:00 a.m. JOSEPH SAVOIE was housed on the Shark Tier, 1/R Cell 7.

On January 3, 2014, Captain Savoy came down the Shark Tier to hit the time clock at which time JOSEPH SAVOIE complained to CAPTAIN SAVOY that Sgt. Thomas had threatened to put something in his food and asked that Sgt. Thomas be removed from working around his food, but no action was taken.

On January 4, 2014, around 7:53 a.m. Sgt. Thomas was working on the Shark 1/R Tier and was bringing a third inmate to the shower when Sgt. Thomas retaliated against JOSEPH SAVOIE by claiming that JOSEPH SAVOIE threw a bar of soap at him in retaliation for the complaint.

Major Davis and Captain Kennedy and Captain Sanders exited on 1/R Tier. Captain Kennedy sprayed a can of chemical in the face of JOSEPH SAVOIE. JOSEPH SAVOIE was transported to R.E.B.T.C. for medical treatment. When he returned back to Camp J Captain Kennedy transported JOSEPH SAVOIE back to Shark Unit. Sgt. Enrico George transported JOSEPH SAVOIE back to cell #7.

While JOSEPH SAVOIE was still in the black box with shackles and hand cuffs and the cell door closed behind him, JOSEPH SAVOIE noticed that his legal papers that were inside of his cell had been destroyed. Sgt. George admitted to doing it and that the reason he did it was in retaliation for JOSEPH SAVOIE complaining to CAPTAIN SAVOY. Sgt. George yelled and declared that JOSEPH SAVOIE had spit on him. CAPTAIN KENNEDY asked, "He spit on you?"

Within seconds MAJOR DAVIS and CAPTAIN KENNEDY and CAPTAIN SANDERS came down the tier to cell 7. MAJOR DAVIS had a can of chemical, but did not use it. MAJOR DAVIS ordered Sgt. Thomas to open cell 7. MAJOR DAVIS

ordered JOSEPH SAVOIE to come out of cell 7. JOSEPH SAVOIE was still in the black box fully restrained with leg shackles and hand cuffs.

At that moment MAJOR DAVIS grabbed JOSEPH SAVOIE and slammed his face against the tier wall while CAPTAIN KENNEDY punched JOSEPH SAVOIE in his body and head.  While MAJOR DAVIS was still holding on JOSEPH SAVOIE from behind MAJOR DAVIS began to punch JOSEPH SAVOIE in his body and head while CAPTAIN SANDERS swung a right hook to strike JOSEPH SAVOIE in the face, which caused a deep cut under the right eye.

CAPTAIN SANDERS continued to punch JOSEPH SAVOIE in his head and body. MAJOR DAVIS noticed the blood from the face and he ordered CAPTAIN SAVOY to bring him a jumpsuit.  They wrapped the jump suit around JOSEPH SAVOIE's face and he was suffocating.  MAJOR DAVIS pulled JOSEPH SAVOIE off of the 1/R tier.  When they reached the Shark unit walkway, MAJOR DAVIS threw JOSEPH SAVOIE to the ground and punched him in the head and jumped and kneed him in his back and kicked him.

While CAPTAIN KENNEDY was kicking JOSEPH SAVOIE and punching him in his head and back and kneeing him, CAPTAIN SANDERS was doing the same. MAJOR DAVIS stated, "This is B team we known for jumping on inmates and killing them."  Major Davis told the Lt. who was working the gate to clear the way.  MAJOR DAVIS lifted JOSEPH SAVOIE by his jumpsuit and walked him to the Transportation Van.  MAJOR DAVIS threw JOSEPH SAVOIE into the front seat.

CAPTAIN SAVOY was present and witnessed the beating and failed to intervene.  When JOSEPH SAVOIE tried to pull the jumpsuit off of his face, MAJOR DAVIS stated put that jumpsuit back on your face and you better not take it off.  MAJOR DAVIS told CAPTAIN SAVOY to let him know if JOSEPH SAVOIE takes the jumpsuit off of his face, and he will stop the van on the side of the street and finish him off.

A Sergeant who calls himself "Cadillac" and CAPTAIN SAVOY transported JOSEPH SAVOIE to R.E.B.T.C. for medical treatment.

The x-rays demonstrated two broken ribs and a broken left shoulder.

Multiple photos were taken of the injuries all over the body. More photos were taken in New Orleans at the Medical Center. These guards have similarly attacked other inmates including Raymond Fobbs and Anthony Harvey.

Mr. Savoy suffered acute injury and multiple serious and prolonged injury which include but are not limited to his arm, neck, back, ribs, back of legs, and face, inhalation, discomfort, humiliation, burning of respiratory system, pain and suffering, mental and emotional injury, medical and pharmaceutical expenses, and lost wages.

## II. Plaintiff not required to plead individual or official capacity of the Defendants

There is no language in the complaint that suggest that Capt Savoy or any other Defendant was sued in an official capacity. "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct" by the officials "giving rise to a constitutional violation."[2] "Personal involvement is an essential element of" this cause of action.[3] So, a supervisor may not be held individually liable under § 1983 based on a theory of vicarious liability.[4] More than conclusional assertions of personal action are required as well; "[t]he plaintiff must allege specific facts giving rise to the constitutional claims."[5]

Here, there is no basis for an official capacity suit and no hint that Mr. Savoy is proceeding against any of the Defendants in their official capacity. Capt. Savoy stood

---

[2] Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (internal citations omitted).

[3] Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

[4] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742; Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984).

[5] Oliver, 276 F.3d at 741.

by and watched and failed to intervene as other guards beat Mr. Savoy. Capt. Savoy has failed to show that he has been sued in an official capacity or that he is a state agency or arm of the state which may be entitled to claim 11th Amendment Immunity. Further, it is noteworthy, that the Defendant in his *Memorandum* [23-1, at 3-6] fails to cite any authority for this Court to dismiss a guard on the basis of Eleventh Amendment immunity or qualified immunity where the state actor personally assaulted the plaintiff therein. The 11th Amendment defense lacks legal support.

### B.     Bystander liability for civil rights violation

In Hale v. Townley, 45 F.3d 914 (5th Cir. 1995), a plaintiff brought a § 1983 action for, inter alia, the use of excessive force during a search and arrest.[6] One of the police officer defendants allegedly stood by, laughed, and shouted encouragement while another officer assaulted the plaintiff.[7] Characterizing the plaintiff's claim as one of bystander liability., this court agreed that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."[8] We further observed that the fact that the police officers "were from different law enforcement agencies does not as a matter of law relieve [an officer] from liability from a failure to intervene."[9] In light of the allegations and evidence in that case, we concluded that there was sufficient evidence to create a genuine issue of material fact concerning the bystanding officer's "acquiescence in the alleged use of force."[10]

The holding in Hale is consistent with other circuits' determination that an officer

---

[6]  Hale, 45 F.3d at 916.

[7]  Hale, 45 F.3d at 919.

[8]  Id.

[9]  Id.

[10]  Id.

6

may be liable under 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[11] Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted); see, e.g., Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009); Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002); see also Nowell v. Acadian Ambulance Serv., 147 F. Sup. 2d 495, 507 (W.D. La. 2001). However, liability will not attach where an officer is not present at the scene of the constitutional violation. See Snyder v. Trepagnier, 142 F.3d 791, 801 n.11 (5th Cir. 1998) (citing Hale, 45 F.3d at 919); see also Gilbert v. French, 364 F. App'x 76, 83 (5th Cir. 2010) (per curiam) (unpublished); Ibarra v. Harris Cnty. Tex., 243 F. App'x 830, 835 & n.8 (5th Cir. 2007) (per curiam) (unpublished) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force.") In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer "acquiesce[d] in" the alleged constitutional violation. Hale, 45 F.3d at 919; see Baker v. Monroe Twp., 50 F.3d 1186, 1193-94 (3d. Cir. 1995) (premising liability on senior officer's knowledge of, and acquiescence in treatment of victim); see also Peavy v. Dall. Indep. Sch. Dist., 57 F. Supp. 2d 382, 390 n.4 (N.D. Tex. 1999) (Hale inapplicable where defendant did not acquiesce in any conduct violating plaintiff's constitutional rights).

    Bystander liability applies to Capt. Savoy.

---

[11] Although Hale most often applies in the context of excessive force claims, other constitutional violations also may support a theory of bystander liability. See Richie v. Wharton Cnty. Sheriff Dep't Star Team, No 12-20014, 2013 WL 616962 at *2 (5th Cir. Feb. 19, 2013) (per curiam) (unpublished) (noting that plaintiff failed to allege facts suggesting that officers "were liable under a theory of bystander liability for failing to prevent...other member[s] from committing constitutional violations"); accord Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.")

### C.  Capt. Savoy not entitled to Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[12] To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, the court conducts the two-step analysis of Saucier v. Katz.[13]

> We therefore first ask the threshold "constitutional violation question" of whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right.[14] If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.[15] If, however, the alleged conduct amounts to a constitutional violation, then we ask the "qualified immunity question" of whether the right was clearly established at the time of the conduct.[16] Qualified immunity allows for officers to make reasonable mistakes about whether their conduct violates the law, and an officer's mistake is reasonable when there are insufficient indicia that the conduct in question was illegal.[17] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[18] If we answer both the constitutional violation and qualified immunity questions affirmatively, the officer is not entitled to qualified immunity." Lytle v. Bexar County, 560 F.3d 404, 409-410 (5th Cir. 2009).

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the alleged

---

[12] Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[13] Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).

[14] *Citing* Saucier v. Katz, 533 U.S. at 201.

[15] *Citing* Saucier v. Katz, 533 U.S. at 201.

[16] *Citing* Saucier v. Katz, 533 U.S. at 201.

[17] *See* Freeman v. Gore, 483 F.3d 404, 415 (5th Cir. 2007).

[18] Saucier, 533 U.S. at 202.

8

violation.[19]  The relevant inquiry is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation in which he was confronted.[20] Here, Mr. Savoy has alleged a clear violation of the law by Capt. Savoy and such conduct was excessive and in violation of his rights under the United States Constitution.

Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury.[21]  The party seeking to avoid a qualified immunity defense must allege facts sufficient to show that the defendant either intended to do harm or took an action which, although not intentional, was so likely to produce injury that the harm can be characterized as substantially certain to result.[22]

"Deliberate indifference" lies between negligence and purpose or knowledge; it is "the equivalent of recklessly disregarding [a] risk."[23] This recklessness standard means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."[24] "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[25] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in

---

[19] Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009); Hare v. City of Corinth, 135 F.3d 32, 325 (5th Cir. 1998).

[20] Id.

[21] Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010).

[22] Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980).

[23] Farmer v. Brennan, 511 U.S. 825 (1994).

[24] *Id.* at 837.

[25] *Id.*

9

the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[26]

Mr. Joseph Savoy's Fourth Amendment and Eighth Amendment Rights were clearly established at the time of this incident. Moreover, officials that have actual or constructive knowledge of constitutional violations and fail to carry out their duty to correct may be held liable. Finally a supervisor's deliberate indifference to subordinate's wrongdoing must have "caused a constitutional injury to the" plaintiff.[27] Here, Capt. Savoy had a duty to protect Mr. Savoy from a beating; yet, Capt. Savoy stood by and watched.

In making the qualified immunity analysis, the Court must consider whether (1) taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional right,[28] and (2) whether the right allegedly violated was clearly established at the time of the infraction.[29] The relevant inquiry is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation in which he was confronted.[30]

## III. STANDARD ON MOTION TO DISMISS

The Defendants have failed to carry their burden of proof on their motion to dismiss. On a motion to dismiss for failure to state a claim under Rule 12 (b)(6), the

---

[26] *Id.* at 842.

[27] O'Quinn v. Manuel, 773 F.2d 605, 608-609 (5th Cir. 1985), citations omitted; Doe v. Taylor ISD, 15 F.3d 443, 453 (5th Cir. 1994).

[28] *Id.*

[29] Mitchell v. Forsyth, 105 S.Ct. 2806, 2815 (1985).

[30] *Id.*

Court "must accept as true all of the factual allegations contained in the complaint."[31] As set forth above, the *Complaint for Damages* [1] alleges that Mr. Savoy was beaten as Capt. Savoy, a ranking officer, stood by and watched and failed to intervene. The *Complaint* alleges a pattern and practice of conduct by these same guards of malicious conduct on inmates who are restrained, out numbered and/or defenseless.

Defendants cite the <u>Alton v. Texas A&M University</u>, 168 F.3d 196, 201 (5th Cir. 1999),[32] noting that "Actions and decisions made by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[33] However, it is alleged by Mr. Savoy that Capt. Savoy purposefully physically struck the plaintiff with multiple blows - no one could argue that this conduct was merely inept or ineffective. When the Court looks at the factual allegations in Plaintiff's *Complaint* specifically relating to Capt. Savoy, Mr. Savoy has stated a 42 U.S.C. § 1983 claim upon which relief can be granted. Further, it is noteworthy, that Mr. Savoy in his *Memorandum* [23-1] fails to cite any authority to dismiss a state actor on the basis of qualified immunity where the state actor is faced with allegations that he personally assaulted the plaintiff therein.

In <u>Alton</u>, a student in the Corps of Cadets at Texas A&M University brought suit claiming deprivation of constitutional rights arising out of hazing by student leaders within the Corps. The plaintiff brought suit alleging injuries caused by the student defendants and also by school officials. The District Court granted a summary judgment in favor of Defendants on qualified immunity grounds and the Fifth Circuit affirmed that ruling. Alton argued his injuries were the result of the officials' implementing and condoning the Corps' custom and policy of hazing. At no time did Alton allege that any

---

[31] Fed. R. Civ. P. 12 (b)(6).

[32] See FN 31 of *Motion to Dismiss* [23-1] at 7.

[33] [13-1] at page 6, (*quoting* <u>Alton v. Texas A&M University</u>, 168 F.3d 196, 201 (5th Cir. 1999).

11

school official personally participated in his hazing. Here, Capt. Savoy physically assaulted Mr. Savoy as was alleged in the *Complaint for Damages* [R. Doc. 1].

Likewise, Malley[34] as well as Pearson[35], which are cited by Capt. Savoy, both dealt with the validity of the qualified immunity defense where law enforcement officers had executed warrants for the arrest and/or search of the petitioner's home or person. Neither case deals with the substance of the instant matter, wherein a plaintiff alleges a excessive force personally committed by an official's own hand, not by some alleged condonation or ratification of policy or practice.

Mr. Savoy has failed to carry his burden of proof on his motion to dismiss.

## CONCLUSION

This Court should deny the motion to dismiss.

                Respectfully submitted:

                s/ Donna U. Grodner
                Donna U. Grodner (20840)
                GRODNER & ASSOCIATES
                2223 Quail Run, B-1
                Baton Rouge, Louisiana 70808
                (225) 769-1919
                FAX (225) 769-1997

## CERTIFICATE

I hereby certify that on March 4, 2015, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel named below by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to the parties marked non-CM/ECF participants:

                s/Donna U. Grodner
                Donna U. Grodner (20840)
                GRODNER & ASSOCIATES

---

[34] Malley v. Briggs, 106 S.Ct. 2727 (1982).

[35] Pearson v. Callahan, 129 S.Ct. 808 (2009).

2223 Quail Run, B-1  
Baton Rouge, Louisiana 70808  
(225) 769-1919 FAX 769-1997  
Email:dgrodner@grodnerlaw.com