```
                                                                    1

              UNITED STATES DISTRICT COURT

              MIDDLE DISTRICT OF LOUISIANA



   * * * * * * * * * * * * * *
                              *   CIVIL ACTION
   JOSEPH SAVOIE              *   NO. 14:0700
                              *
   versus                     *   BRADY
                              *
   MAJOR DANIEL DAVIS, ET AL  *   RIEDLINGER
                              *
   * * * * * * * * * * * * * *



         The testimony of JOHN GLENN SANDERS,
   taken by the plaintiff pursuant to notice
   and the within stipulation at Roedel,
   Parsons, Koch, Blache & McCollister law
   firm, 8440 Jefferson Highway, Suite 301,
   Baton Rouge, Louisiana, beginning at 1:15
   p.m. on July 17, 2015.



         Before Mark LaCour, Certified
   Stenomask Reporter, in and for the State of
   Louisiana.
```

STATE'S EXHIBIT C (Blumberg No. 5138)

```
                                                           13
```

1  Savoy.
2          Q.    Camp J supervisor's office.  Is
3  that in a specific dorm or attached to a
4  specific dorm?
5          A.    It's attached to the kitchen.
6          Q.    Attached to the kitchen, okay.
7  So the three of y'all, let's see, you,
8  Major Davis and Savoy were together when
9  the call came in?
10         A.    Correct.
11         Q.    And then you said you went there
12 and when you got there Kennedy and Davis
13 had him against the wall?
14         A.    Correct.
15         Q.    And you said he was already
16 bleeding?
17         A.    Correct.
18         Q.    Did you actually observe Kennedy
19 or Davis striking or hitting or beating
20 Mr. Savoie?
21         A.    Yes.
22         Q.    Tell us what you saw?
23         A.    Outside of the building on the
24 breezeway he was on the ground and they
25 stomped him and hit him a couple of times.

14

1    Q.   Davis and --
2    A.   Captain Kennedy.
3    Q.   -- Kennedy, okay. All right,
4  what about Savoy -- okay, let's before we
5  get on the breezeway, I'm sorry, I'm
6  getting ahead of myself. Let's stay in
7  the hallway right now. He was in the cell
8  or outside of the cell when you got there?
9    A.   Outside of the cell pinned
10 against the wall.
11   Q.   Pinned against the wall?
12   A.   Yes.
13   Q.   Was he in restraints, not in
14 restraints?
15   A.   In restraints.
16   Q.   Full restraints?
17   A.   Yes, ma'am.
18   Q.   Black box?
19   A.   I think so. I'm not -- either
20 black -- I'm pretty sure, yes. Yes.
21   Q.   All right. So the people that
22 arrived with you was you, Savoy and --
23   A.   Davis was ahead of us.
24   Q.   Okay, so Davis was already
25 there. So just you and Savoy got there

1     A.    He asked Captain Savoy to get
2  him an orange jumpsuit.
3     Q.    All right, where was Savoy at
4  this time?
5     A.    In the lobby.
6     Q.    And did Savoy comply?
7     A.    Yes.
8     Q.    So Savoy got the orange
9  jumpsuit.  How -- he was 20 feet away, so
10 he threw it to him or --
11    A.    No, he met Major Davis -- Major
12 Davis met him at the head of the tier and
13 gave it to him.
14    Q.    So Major Davis left the inmate
15 with you and Kennedy?
16    A.    Yes.
17    Q.    He walked away from the inmate.
18    A.    Yes.
19    Q.    So the only person holding the
20 inmate at this time was who?
21    A.    Captain Kennedy.
22    Q.    Okay, and you were just standing
23 there?
24    A.    Right.
25    Q.    So he walked up to the front of

1  I'm sorry. Who removed him from the tier
2  area?
3      A.    I think Major Davis.
4      Q.    Okay. So tell me what did Major
5  Davis do?
6      A.    He escorted him, walked him off
7  of the tier into the breezeway.
8      Q.    And where were you?
9      A.    I was behind him.
10     Q.    About how far were you behind?
11     A.    Approximately ten feet maybe.
12     Q.    All right. Where was Savoy?
13  MR. SHERBURNE:
14          Objection, form.
15  THE WITNESS:
16          Which Savoy?
17  BY MS. GRODNER:
18     Q.    James, I'm sorry.
19     A.    He was in the lobby somewhere.
20  I'm not really -- don't really remember
21  exactly.
22     Q.    You saw him in the lobby?
23     A.    At some point I did. I can't
24  remember exactly when we were walking out
25  where he was at.

```
 1              A.      Yes, ma'am.
 2              Q.      And then according to your
 3      testimony Captain Savoy never struck him
 4      at all?
 5              A.      That's correct.
 6              Q.      But Captain Savoy witnessed him
 7      being struck?
 8              A.      I don't know.
 9              Q.      Well, you said he was right
10      there with you on the breezeway?
11              A.      He was there.  He says he didn't
12      see so I don't know what he saw.
13              Q.      He told you he didn't see
14      anything?
15              A.      Right.
16              Q.      When did he tell you that?
17              A.      The same day.
18              Q.      Okay.  Let me make sure I
19      understand.  He walked from the outside of
20      the Shark Unit down the Shark floor
21      walkway to the transport unit with this
22      inmate, correct?
23              A.      Correct.
24              Q.      And during that period of time
25      there was a period where the inmate was on
```

# CERTIFICATION

I, Mark LaCour, Certified Court Reporter in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that John Sanders, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 47 pages; that this testimony was reported by me in the stenomask reporting method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board, that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board; that I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

7-28-15

Date

Mark LaCour, C.C.R.

\# 89054

**ASSOCIATED REPORTERS, INC.**
Mark LaCour, C.C.R.
(225) 216-2036